UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

WILLIAM RODRIGUEZ,

                         Plaintiff,

        -v-

THE CITY OF NEW YORK, et al.,

                        Defendants.

------------------------------------------------------------X

No. 11 Civ. 2053 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

      Plaintiff William Rodriguez brings this action against Defendants City of New York (the "City"), the New York City Police Department, Police Officers and Sergeants John Does 1 through 5, Western Beef, Inc. ("Western Beef") and Paul White.[1] The City and Western Beef have each moved for summary judgment. For the reasons that follow, the Court grants the City's motion as to Rodriguez's federal claim brought pursuant to 42 U.S.C. § 1983, dismisses his claims against the New York City Police Department and the John Doe Defendants and declines to exercise supplemental jurisdiction over his state law claims.

---

[1] The Verified Complaint names "Paulie 'L/K/U' (Last Name Unknown)" as a defendant. This individual has since been identified as Paul White.

I.   **Background**[2]

   A.   **The Dispute Between Rodriguez and White**

On August 13, 2010 at approximately 3:00 p.m., Rodriguez left work and went to a nearby bar with a few co-workers. (Rodriguez Dep. 39:25, 40:1-12.) He stayed at the bar for "an hour or so," during which time he drank "about three" beers. (Id. at 40:17-22.) He left the bar feeling "tipsy," and took the subway to Prospect Avenue in the Bronx where he lived. (Id. at 47:1-7; Western Beef 56.1 ¶ 3; City 56.1 ¶¶ 7-8.) Upon his arrival, he went directly to meet his children at Western Beef, a supermarket about four blocks from his home. (Western Beef 56.1 ¶¶ 3-4; City 56.1 ¶ 9; Rodriguez Dep. 47:24-25, 48:1-5.)

When Rodriguez and his children entered Western Beef, Rodriguez went to use the bathroom in the back of the store. (Western Beef 56.1 ¶ 5.) Upon leaving the bathroom and noticing that his children had wandered away from the bathroom area, Rodriguez whistled loudly approximately three times. (Id. ¶ 6; City 56.1 ¶ 10.) According to Rodriguez, he was then approached by a uniformed Western Beef security guard who told him to leave the store because he was making too much noise. (Rodriguez Dep. 52:18-19, 52:22-24.) The security guard escorted Rodriguez out of the store. (Id. at 53:4-5.) Once Rodriguez reached the store's exit, he alleges that he was approached by Paul White, another Western Beef security guard who was not in uniform. (Id. at 54:13-16, 55:7-12.) According to Rodriguez, White told him that he was

---

[2] The following facts are undisputed unless otherwise noted and are drawn from allegations in the Complaint; Defendant City of New York's Statement of Undisputed Facts Pursuant to Rule 56.1 ("City 56.1"); the exhibits attached to the Declaration of Linda Mindrutiu in Support of Motion for Summary Judgment by The City of New York ("Mindruitui Decl."); Defendant Western Beef's Statement of Undisputed Facts Pursuant to Rule 56.1 ("Western Beef 56.1"); the exhibits attached to the Affidavit in Support of Motion of Albert W. Cornachio III ("Cornachio Aff."); and Plaintiff's Statement of Facts Pursuant to Rule 56.1 ("Rodriguez 56.1"). Although Rodriguez submitted a response to the City's 56.1 Statement, he did not submit a response to Western Beef's 56.1 statement, as required by Local Civil Rule 56.1(b). Nonetheless, while the Court is not obligated to "perform an independent review of the record to find proof of a factual dispute," Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470-71 (2d Cir. 2002), in the interest of fairness to the litigants, it has done so here. See Monahan v. NYC Dep't of Corr., 214 F.3d 273, 292 (2d Cir. 2000) ("While the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out.").

never allowed to return to the Western Beef, to which he responded by saying "why am I not going to come back? I didn't do nothing wrong." (Id. at 54:23-25, 55:1, 55:25, 56:1.) At that point, Rodriguez alleges that White "got a little aggressive." (Id. at 57:16-19.) When Rodriguez turned around and started walking away, White allegedly punched Rodriguez in the head. (Id. at 58:18-25, 59:1-10.) Rodriguez says that he was "knocked out" by the punch and fell to the ground, (id. at 59:10-13.), although he does not remember falling, (id. at 61:4-5).

Neither the City's nor Western Beef's 56.1 Statement details the interaction between White and Rodriguez; rather, both merely state that "[a]n altercation ensued between plaintiff and a Western beef security guard" and that Rodriguez "fell down and was rendered unconscious." (Western Beef ¶¶ 9-10; City 56.1 ¶¶ 9-10.) All parties agree, however, that Rodriguez fell on his left side and was bleeding from his head. (Western Beef 56.1 ¶ 10; City 56.1 ¶¶ 14-16.) It is also undisputed that at approximately 7:26 p.m., a 911 call was made regarding an assault at Western Beef. (City 56.1 ¶¶ 18-19.)

### B. The Dispute Between Rodriguez and the City

Police officers arrived at the scene while Rodriguez was still lying on the ground. (City 56.1 ¶ 20; Rodriguez Dep. 62:20-22.) According to the City, upon arrival Police Lieutenant Christopher Pupo was informed by an off-duty Lieutenant in the Fire Department of New York that Rodriguez was an emotionally disturbed person who needed medical attention. (City 56.1 ¶ 22.) Rodriguez spoke with the officers in front of the Western Beef and told them that he got hit on the head. (Id. ¶ 25.) Rodriguez also stated that he felt "woozy" and "couldn't keep [his] balance" while he was standing up talking to the police officers. (Rodriguez Dep. 69:10-14.) He also remembered being worried and "yelling for [his] daughter." (Id. at 70:15-71:11.) Pupo observed Rodriguez staggering and bleeding from his head. (City 56.1 ¶ 27.) Rodriguez was

then handcuffed by police officers; an action which the City alleges was taken for Rodriguez's own safety. (Id. ¶ 34.)

At some point, Rodriguez and a few police officers ended up on the ground. (Id. ¶ 40.) The City argues that the evidence shows that Rodriguez tripped and fell to the ground. (Id. ¶ 43.) Although Rodriguez acknowledged an inability to remember portions of his interactions with the police officers, he described them generally as follows: "[w]ell, they grabbed me, they handcuffed me, threw me to the ground, put their knees on me, like three or four cops." (Rodriguez Dep. 66:2-5.) He further described that he was "shove[d]" and that it was "like a slam." (Id. at 72:17-20, 76:16-17.) According to Rodriguez, after the police left him on the ground for a few minutes, they picked him up and put him in the ambulance. (Id. at 84:18-85:2.) Once in the ambulance, his handcuffs were removed and he was taken to Lincoln Hospital where he was diagnosed with "acute alcohol intoxication in alcoholism, unspecified." (Id. at 88-16-22; City 56.1 ¶¶ 47-48.) Rodriguez was not taken to a police precinct or charged with any crime, nor did he receive a summons or get arrested. (City 56.1 ¶¶ 49-51.)

C. **Legal Proceedings**

Rodriguez brought this action on February 18, 2011 in the Supreme Court of the State of New York, Bronx County. The Verified Complaint names the City of New York, the New York City Police Department, John Does 1 through 5, Western Beef and Paul White and asserts causes of action for "Policy of Non-Feasance in the Protection of Plaintiff's Civil Rights," "Assault and Battery," and "Common Law Negligence Against Western Beef and Paulie L/N/U." Western Beef removed the action to this Court on March 24, 2011. The City and Western Beef now move for summary judgment. For the reasons set forth below, the City's motion for summary judgment is granted as to Rodriguez's Section 1983 claim. His claims against the New York

City Police Department and the John Doe Defendants are dismissed. The Court declines to exercise supplemental jurisdiction over Rodriguez's state law claims and they are thus dismissed as well.

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the burden of establishing the absence of any genuine issue of material fact." Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Windsor v. United States, 699 F.3d 169, 192 (2d Cir. 2012) (internal quotation marks and alterations omitted). "All ambiguities must be resolved in favor of the non-moving party and all permissible inferences from the factual record must be drawn in that party's favor." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). Nonetheless, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

## III. Discussion

### A. Section 1983 Claims

#### 1. Claims Against the Individual Officers

Although his allegations are not entirely clear from the Complaint, Rodriguez appears to be bringing claims against the John Doe police officers pursuant to 42 U.S.C. § 1983 for false arrest and excessive force. Additionally, while not raised in the Complaint, his opposition to the

City's motion for summary judgment includes allegations that the officers denied him medical treatment. He has not, however, amended the Complaint to identify the John Doe officers, nor has he served any individual officers.

On August 23, 2011 and October 27, 2011, the City provided discovery identifying eight police officers who were present during the incident. (Mindrutiu Decl. Exs. C-E.) Discovery closed on October 12, 2012. (Dkt. No. 26.) Because Rodriguez has had sufficient time to amend his complaint to include the names of such officers but has not done so, his claims against the John Doe defendants are dismissed. See Delrosario v. City of New York, No. 07 Civ. 2027 (RJS), 2010 WL 882990, at *5 (S.D.N.Y. Mar. 4, 2010) ("Where discovery has closed and the Plaintiff has had ample time and opportunity to identify and serve John Doe Defendants, it is appropriate to dismiss those Defendants without prejudice.").

### 2. Claims Against the New York Police Department

Rodriguez also names both the City of New York and the New York City Police Department as defendants in this action. Agencies of the City of New York, however, including the New York City Police Department, are not suable entities. See N.Y. City Charter Ch. 17 § 396; Ximenes v. George Wingate High, 516 F.3d 156, 160 (2d Cir. 2008) ("Section 396 of the Charter has been construed to mean that New York City departments, as distinct from the City itself, lack the capacity to be sued."); Jenkins v. City of New York, 478 F.3d 76, 93 n.19 (2d Cir. 2007) ("[T]he NYPD is a non-suable agency of the City."). Accordingly, Rodriguez's claims against the New York City Police Department are dismissed.

3. **Monell Claim Against the City**[3]

Under 42 U.S.C. § 1983, a municipality is not vicariously liable for the acts of its employees. See Coon v. Town of Springfield, 404 F.3d 683, 686-87 (2d Cir. 2005) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). Rather, "[p]laintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." Connick v. Thompson, 131 S. Ct. 1350, 1355 (2011) (quoting Monell, 436 U.S. at 691). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Id. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Id. This failure to train theory of liability, however, requires proof of "deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989).

The City moves for summary judgment on Rodriguez's Monell claim on the grounds that he has failed to adequately allege or adduce evidence that he suffered any constitutional harm as a result of a municipal policy. The Court agrees. Although Rodriguez seeks relief from the City for the allegedly unconstitutional actions of police officers, he has not produced any evidence that these officers' actions were pursuant to the decisions of any government lawmaker or policymaking official or that they reflect a persistent and widespread practice. Rodriguez's Complaint includes several allegations that the City "failed to competently and sufficiently hire,

---

[3] To the extent that Rodriguez is attempting to bring a claim against Western Beef pursuant to 42 U.S.C. § 1983, this claim is meritless. Western Beef is a private entity. For an action taken by a private entity to be considered a state action, as required by § 1983, "the conduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the State." Lugar v. Edmondson Oil Co., 457 U.S. 922, 928 (1982). Here, Rodriguez makes no claims that White or Western Beef's actions are at all attributable to the State.

train and retain the defendant officers." (Compl. ¶¶ 17-18; see also ¶¶ 26, 29, 30.) These allegations, however, are purely conclusory and insufficient to establish Monell liability based on the City's failure to train. See Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) (holding that "the simple recitation that there was a failure to train municipal employees is not sufficient to allege that a municipal custom or policy caused the plaintiff's injury . . . in the absence of allegations of fact tending to support, at least circumstantially, such an inference."). Rodriguez does not "identify a specific deficiency in the city's training program" or "establish that that deficiency is closely related to the ultimate injury such that it actually caused the constitutional deprivation." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 129 (2d Cir. 2004) (internal quotation marks omitted). In fact, Rodriguez alleges no specific facts regarding the August 13, 2010 incident that could lead a reasonable trier of fact to find him to be the victim of an official custom or policy.

Moreover, the Second Circuit has noted that "[a] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." Ricciuti v. New York City Transit Authority, 941 F.2d 119, 123 (2d Cir. 1991); see also Sorlucco v. New York City Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992) ("A municipal agency may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees."); Santiago v. Campisi, 91 F. Supp. 2d 665, 675-76 (S.D.N.Y. 2000) ("A single incident of unconstitutional activity is insufficient to infer a custom, policy or practice as required by Monell to impose municipal liability."). Rodriguez's claim against the City for the conduct of the unidentified officers based on this single, isolated incident is insufficient to show a municipal policy.

Because the record is "barren of specific evidence demonstrating the existence of a

8

municipal policy or custom," Webster v. City of New York, 333 F. Supp. 2d 184, 207 (S.D.N.Y. 2004), the City's motion for summary judgment is granted with respect to Rodriguez's Section 1983 claim.

### B.  State Law Claims

The remainder of Rodriguez's Complaint alleges state law claims against the City and Western Beef and thus the Court may entertain them only by exercising supplemental jurisdiction pursuant to 28 U.S.C. § 1367. "[T]he exercise of supplemental jurisdiction is left to the discretion of the district court." Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir. 1994). The Second Circuit instructs, however, that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)); see also United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

Here, Rodriguez's federal claims have been dismissed. The Court need not address which of Rodriguez's state law claims against the City and Western Beef survive a motion for summary judgment, as the Court declines in its discretion to consider them pursuant to 28 U.S.C. § 1367(c). Accordingly, the Court denies Rodriguez's state law claims without prejudice.

### IV.  Conclusion

For the foregoing reasons, Defendant City of New York's motion for summary judgment

is granted as to Rodriguez's Section 1983 claim. His Section 1983 claims against the John Doe officers and sergeants are similarly dismissed, as are his claims against the New York City Police Department. As the Court declines to exercise supplemental jurisdiction over Rodriguez's state law claims, they are dismissed without prejudice. The Clerk of Court is respectfully directed to terminate the motions at docket numbers 29 and 38 and close the case.

SO ORDERED.

Dated:      July 15, 2013
            New York, New York

_____
Ronnie Abrams
United States District Judge